UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:05-cr-00554-TLN |
| Plaintiff, | |
| v. | **ORDER** |
| HARVEY LEE SEWELL, JR., | |
| Defendant. | |

This matter is before the Court on Defendant Harvey Lee Sewell, Jr.'s ("Defendant") Emergency Motion for Modification of Sentence. (ECF No. 300.) The Government filed an opposition. (ECF No. 306.) Defendant filed a reply. (ECF No. 307.) For the reasons set forth below, the Court GRANTS Defendant's motion.

///
///
///
///
///
///
///
///

1   **I.      FACTUAL AND PROCEDURAL BACKGROUND**

2          On February 13, 2008, a jury convicted Defendant of all five counts of a Fourth

3   Superseding Indictment for violations of conspiracy to distribute at least 50 grams of crack

4   cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (count one), and distribution of at least 5

5   grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (counts two through five).  (ECF

6   Nos. 105, 162, 168.)  On August 5, 2008, Judge Lawrence K. Karlton sentenced Defendant to a

7   300-month term of imprisonment, 120-month term of supervised release, and $500 special

8   assessment.  (ECF Nos. 180, 181.)  On March 28, 2019, after Defendant filed a motion to reduce

9   sentence pursuant to the First Step Act, this Court accepted a stipulation between the parties

10   reducing Defendant's term of imprisonment from 300 months to 235 months and reducing his

11   term of supervised release from 120 months to 96 months.  (ECF Nos. 298, 299.)  Defendant

12   began his sentence on August 5, 2008 and is currently housed at USP Lompoc.  (ECF No. 306-1

13   at 2–5.)  Defendant's projected release date is September 17, 2022, and Defendant will be eligible

14   for home detention on March 17, 2022.  (*Id.* at 3.)

15          On April 13, 2020, Defendant, through counsel, submitted an administrative request for

16   transfer to home confinement under the CARES Act and for compassionate release under 18

17   U.S.C. § 3582(c)(1)(A) to the USP Lompoc warden.  (ECF No 300-1 at 3–5.)  The warden denied

18   the request on April 24, 2020.  (ECF No. 300-2.)

19          On May 13, 2020, Defendant filed the instant Motion to Reduce Sentence.  (ECF No.

20   300.)  Defendant argues: he is at a greater risk of suffering severe symptoms from COVID-19

21   because he has diabetes, hypertension, and asthma; the conditions at USP Lompoc present a

22   serious threat to his health; and a reduction in sentence to time served is consistent with the

23   sentencing factors set forth in 18 U.S.C. § 3553(a) ("§ 3553(a)").  (*Id.*)  In opposition, the

24   Government argues: Defendant's chronic health conditions are not sufficient to meet the

25   "extraordinary and compelling" standard required by 18 U.S.C. § 3582(c)(1)(A) ("§

26   3582(c)(1)(A)"); Defendant poses a threat to the community; and the § 3553(a) factors weigh

27   against his release.  (ECF No 306.)  The Government also argues the Court does not have

28   / / /

2

jurisdiction to designate Defendant's place of imprisonment under 18 U.S.C. § 3621.  (*Id.* at 14–15.)

## II.   ANALYSIS

### A.   Exhaustion

Generally, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see Dillon v. United States*, 560 U.S. 817, 824–25 (2010).  The compassionate release provision of 18 U.S.C. § 3582(c)(1)(A) sets forth a rare exception to the general rule.  However, relief under 18 U.S.C. § 3582(c)(1)(A) is only available upon motion of the Director of the BOP or

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier…

18 U.S.C. § 3582(c)(1)(A).

Defendant's request for Compassionate Release/Reduction in Sentence was sent to the warden at USP Lompoc on April 13, 2020.  Because 30 days have passed since April 13, 2020, Defendant has met the exhaustion requirement.  *See* 18 U.S.C. § 3582(c)(1)(A).

### B.   Extraordinary and Compelling Reasons

Despite having met the exhaustion requirement, Defendant is eligible for compassionate release only if he can demonstrate there are "extraordinary and compelling reasons" for a sentence reduction and such a reduction is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Defendant has met his burden.

The Sentencing Commission's relevant policy statement on compassionate release identifies medical conditions that satisfy the "extraordinary and compelling" requirement. U.S.S.G. § 1B1.13, cmt. n. 1(A).  More specifically, the "extraordinary and compelling" requirement is met where a defendant is: (i) suffering from a terminal illness; or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process "that substantially diminishes

/ / /

3

1    the ability of the defendant to provide self-care within the environment of a correctional facility

2    and from which he or she is not expected to recover." *Id.*

3           Defendant's BOP medical records — submitted under seal as exhibits to Defendant's

4    motion — indicate that Defendant suffers from type II Diabetes, hypertension, and cardiac

5    arrhythmia.[1]  Under normal circumstances, the Defendant's medical condition would not satisfy

6    the "extraordinary and compelling" standard.  However, the onset of the COVID-19 pandemic

7    and subsequent large outbreak at USP Lompoc have substantially changed how Defendant's

8    conditions are viewed.  The CDC has identified both Diabetes and hypertension as comorbidities

9    which increase the likelihood of serious risk from COVID-19.  Further, "[s]ince the onset of the

10   COVID-19 pandemic, courts have determined that inmates suffering from conditions such as

11   hypertension and diabetes are now at an even greater risk of deteriorating health, presenting

12   'extraordinary and compelling' circumstances that may justify compassionate release." *United*

13   *States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *9 (C.D. Cal. May 21, 2020)

14   (*citing United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *1 (E.D. Pa.

15   Apr. 1, 2020); *United States v. Zukerman*, No. 16-cr-194-AT, 2020 WL 1659880, at *5 (S.D.N.Y.

16   Apr. 3, 2020); *United States v. Colvin*, No. 3:19-cr-179-JBA, 2020 WL 1613943, at *4 (D. Conn.

17   Apr. 2, 2020); *United States v. Pena*, No. 15-cr-551-AJN, 2020 WL 2301199, at *4 (S.D.N.Y.

18   May 8, 2020)).  Indeed, even the Government's opposition concedes that "defendant's serious,

19   chronic health condition is potentially qualifying under the policy statement in light of the risk of

20   infection of COVID-19."  (ECF No. 306 at 10.)

21          Additionally, not only do Defendant's medical conditions put him at greater risk, but he is

22   housed at USP Lompoc which has had one of the worst COVID-19 outbreaks in any federal

23   prison.  USP Lompoc has had 174 inmates contract COVID-19.  While at present there are only

24   15 active inmate cases, the prevalence of the disease in this facility puts Defendant at great and

25   particularized risk due to his well-documented, serious, and ongoing health conditions.

26

27   [1]       While Defendant alleges he also suffers from asthma, the submitted medical records do
     not include any such diagnosis or treatment.  Further, the Presentence Report ("PSR") indicates
28   he suffered from asthma until he was 27 years old.  PSR ¶ 65.

4

For these reasons, Defendant has demonstrated extraordinary and compelling reasons for his immediate release based on his serious medical conditions and the prevalence of COVID-19 at the facility where he is housed.  However, before granting Defendant's motion, the Court must consider whether he is a danger to the community and whether the § 3553 factors support his release.  18 U.S.C. § 3582(c)(1)(A).

C.     Danger to the Community

The Government argues Defendant is ineligible for compassionate release because he is a continuing danger to the community.  U.S.S.G. § 1B1.13(2) (requiring courts to determine that a defendant is not "a danger to the safety of any other person or to the community").   Specifically, the Government cites Defendant's criminal history and the fact that he was 44 years old when he was charged with the crimes which resulted in his current conviction as well as previous violations of parole.  (ECF No. 306 at 11–12.)  However, since that time, Defendant has served over 14 years in prison, primarily at Lompoc, first in the low security level institution at FCI Lompoc, and then to the minimum-security camp at USP Lompoc.  In that time, he has had no prison disciplinary record.  (ECF No. 293 at 5.)  While the Government argues this fact and the resulting inference of rehabilitation are not sufficient to establish an "extraordinary and compelling" reason for release, it does weigh in favor of finding Defendant is no longer a threat to the community.  Further, Defendant is now 57 years old and his proposed residence post-release is with his daughter in Texas.  The passage of time and Defendant's age make it less likely that he will continue his criminal behaviors.  Further, Defendant's plan to move away from the city in which he committed his crimes will remove him from contacts and environments that might otherwise encourage a return to his previous conduct.

Given these considerations, the Court determines Defendant does not pose a danger to the community.

D.     Section 3553(a) Factors

Further, the § 3553(a) factors weigh in favor of granting Defendant's compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the factors set forth in § 3553(a) before granting compassionate release).  Under § 3553(a), in imposing a sentence and

5

1   considering compassionate release the Court must consider a number of factors including: "the

2   nature and circumstances of the offense and the history and characteristics of the defendant; the

3   need for the sentence imposed; the kinds of sentences available; the kinds of sentence and the

4   sentencing range established in the Guidelines; any pertinent policy statement issued by the

5   Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants

6   with similar records who have been found guilty of similar conduct; and the need to provide

7   restitution to any victims." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc)

8   (citing 18 U.S.C. § 3553(a)(1)–(7)).

9           Defendant's offense was non-violent and, considering the analysis above, Defendant no

10   longer poses a danger to the community.  Therefore, the nature and circumstances of the offense

11   and Defendant's history and characteristics weigh in favor of release.  Further, Defendant's time

12   served meets "the four identified purposes of sentencing: just punishment, deterrence, protection

13   of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017).  The

14   approximately 14 years Defendant has spent in prison constitutes a just punishment for his

15   undeniably serious criminal offenses and is sufficient to deter such conduct.  Defendant has

16   served 172 months and earned 25 months good-time credit.  (ECF No. 306-1 at 4.)  Keeping

17   Defendant imprisoned for the next approximately 22 months until he is eligible for home

18   confinement would endanger Defendant's health without improving upon the purposes of

19   sentencing.  Additionally, Defendant's prison record shows no disciplinary actions and is

20   evidence of Defendant's rehabilitation as a result of his incarceration.  To prolong Defendant's

21   imprisonment further would be to impose a sentence "greater than necessary" to comply with the

22   statutory purposes of sentencing.

23           As to the need to avoid unwarranted sentence disparities, Defendant has already served

24   the mandatory statutory minimum ten years and, while the reduction would be a downward

25   departure from the applicable guidelines range, this departure is in line with that granted by Judge

26   Karlton at Defendant's original sentencing.  The PSR concluded the original guidelines range was

27   360 months to life.  (PSR at 19.)  At sentencing, Judge Karlton determined this guidelines range

28   was greater than necessary to satisfy the purposes of sentencing under § 3553(a) and sentenced

1   Defendant to 300 months in prison, approximately 17 percent below the guideline.  (ECF No. 217

2   at 3–4.)  As a result of the First Step Act, Defendant's guidelines range was reduced to 235 to 293

3   months.  The 197 months Defendant has served, inclusive of his good-time credits, also

4   represents an approximately 17 percent reduction from the low end of the guideline.  While the

5   simple fact that the sentencing judge granted a downward departure at the original sentencing

6   does not entitle the Defendant to a similar departure here, looking at these factors as a whole and

7   due to the unprecedented threat of COVID-19, the Court finds there is justification to grant a

8   similar downward departure.

9        In sum, Defendant has shown extraordinary and compelling reasons for his reduction in

10   sentenced based on his health conditions which put him in significant danger of contracting and

11   suffering severe symptoms from COVID-19.  Moreover, Defendant is not a danger to society and

12   the § 3553(a) factors support his release.

13       **III.   CONCLUSION**

14       For the foregoing reasons, the Court hereby GRANTS Defendant's Emergency Motion for

15   Modification of Sentence.  (ECF No. 300.)  Accordingly, the Court modifies Defendant's

16   sentence of imprisonment to time served followed by the 96-month term of supervised release

17   imposed in the previous sentence.

18       In addition, the Court imposes a special condition of supervised release that Defendant be

19   subject to a six-month period of home confinement, to begin as soon as possible after his release.

20   The terms of the special condition are as follows:

21           The defendant shall be monitored for a period of six months, with
22           location monitoring technology, which may include the use of radio
             frequency (RF), Global Positioning System (GPS) devices, Voice
23           Recognition or SmartLink, at the discretion of the probation
             officer.  The defendant shall abide by all technology requirements,
24           which could include the requirement of a cellular phone (SmartLink)
             or the installation of a landline (VoiceID).  Defendant shall pay the
25           costs of location monitoring based upon their ability to pay as
             directed by the probation officer.  In addition to other court-imposed
26           conditions of release, the defendant's movement in the community
             shall be restricted as follows:

27           The defendant shall be restricted to his residence at all times except
             for employment; education; religious services; medical, substance
28           abuse, or mental health treatment; attorney visits; court appearances;

1

court-ordered obligations; or other activities as pre-approved by the
probation officer.

2

The Government shall serve a copy of this order on the Warden at USP Lompoc forthwith.

3

Defendant shall be released only after all release and travel plans are in place.

4

   IT IS SO ORDERED.

5

DATED:  June 5, 2020

6

7

8

   _____
   Troy L. Nunley
9   United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28